IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | 1:15-cr-367-WSD |
| **ANTHONY LEPORE, JOHN RIFE, and BRIAN DOMALIK,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Brian Domalik's ("Domalik") Motion In Limine to Preclude the Introduction of Privileged Communications [184] (the "Motion").

## I. BACKGROUND

Domalik seeks to exclude testimony from Andrea Kiehl ("Kiehl"), Diversified Maintenance Systems' ("DMS") former General Counsel, about certain of her conversations with Domalik. Domalik argues these conversations are protected by the attorney-client privilege.[1]

---

[1] Defendants Anthony Lepore ("Lepore") and John Rife ("Rife") have not moved to exclude testimony about Kiehl's conversations with them.

In the summer of 2013, DMS began discussing with Rite Way Service Inc. ("Rite Way") an acquisition of Rite Way.  Domalik was then a Rite Way employee.  ([198] at 1).  In November 2013, DMS learned that the Georgia Bureau of Investigation ("GBI") was conducting a criminal investigation into issues involving Rite Way, including Rite Way's relationship with the Georgia World Congress Center Authority ("GWCCA").  ([198] at 2).  As part of its due diligence concerning its potential acquisition of Rite Way, Kiehl and DMS CEO Alan Butcher ("Butcher") spoke with several Rite Way officers and employees, including Domalik, about the nature of the criminal investigation and what they knew about it.  ([198] at 2).

In November 2013, Butcher and Kiehl met with Domalik, in Domalik's office.  Butcher and Kiehl told Domalik that the meeting "was part of their due diligence for DMS" in considering the possible acquisition of Rite Way.[2]  Domalik told Butcher and Kiehl that the GBI asked him about "kickbacks, an apartment, and the [GWCCA]."  He told them that he "had nothing to do with it" or that he "did nothing wrong," that the GWCCA contract administrator, later identified as

---

[2]   Domalik claims Butcher and Kiehl told him their conversation was confidential.  ([199] at 2).  The Government states that Butcher and Kiehl did not promise confidentiality but told Domalik that "they would do the best they could."  ([198] at 6 n.3).

Patrick Johnson, sometimes had to stay in the apartment because he was going through a divorce, and that there were rumors that the apartment served as a "bachelor pad" for the GWCCA contract administrator.  Domalik told Butcher and Kiehl that Rite Way employed the Wright Group as a subcontractor on the GWCCA account, that Rite Way was told that it had to use the Wright Group, that the Wright Group did not actually do anything, that Domalik thought it was wrong, and that Domalik terminated the Wright Group when he discovered it had been engaged by Rite Way.  The Government intends to elicit testimony from Kiehl about this conversation in Domalik's office.  (See [198] at 6).

Butcher and Kiehl did not speak with Domalik again before DMS acquired Rite Way's assets on March 19, 2014.  ([198] at 6 n.3).  DMS initially considered acquiring Rite Way by purchasing its stock.  As a consequence of the criminal investigation about which it learned, DMS chose to purchase Rite Way's assets, making various "allowances or reserves to account for costs that might be incurred in connection with the criminal investigations."  (See [198] at 3, 7).

**II.   DISCUSSION**

    A.   <u>Legal Standard</u>

Federal common law governs the existence and scope of the attorney-client privilege.  See <u>Hancock v. Hobbs</u>, 967 F.2d 462, 466 (11th Cir. 1992) ("A claim of

3

privilege in federal court is resolved by federal common law." (citing Fed. R. Evid. 501)). "The attorney-client privilege attaches only to communications made in confidence to an attorney by that attorney's client for the purposes of securing legal advice or assistance." In re Grand Jury Investigation, 842 F.2d 1223, 1224 (11th Cir. 1987). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991).

    B.    <u>Analysis</u>

Domalik's November 2013, conversation with Kiehl is not protected by the attorney-client privilege because it was not a communication to an attorney by that attorney's client, and the purpose of the conversation was not to secure legal advice. At the time of the meeting, when the challenged comments were made, Domalik was employed by Rite Way. Domalik's communications were with Kiehl, who was employed by, and whose client was, DMS. The parties agree, and Kiehl and Butcher told Domalik when they met with him, that the conversation was part of DMS's due diligence concerning its potential acquisition of Rite Way. (See, e.g., [198] at 6 n.3; [194] at 3). That Butcher attended the meeting confirms it was not a confidential communication with a lawyer and confirms that the

4

purpose of the meeting was for DMS to obtain information from Domalik for its business decision regarding whether and, on what terms, to acquire Rite Way. Based on its due diligence, DMS later elected not to purchase Rite Way's stock but only its assets, making various "allowances or reserves to account for costs that might be incurred in connection with the criminal investigations." (See [198] at 3). Domalik did not meet his burden to show that he sought or received legal advice when he communicated with Butcher and Kiehl at the November meeting.[3] Domalik thus did not meet his burden to show the discussion with Butcher and Kiehl was privileged.

"The Government does not intend to elicit testimony about any statements of Domalik to Kiehl or any other DMS lawyer that may have taken place after March 19, 2014." ([198] at 8). The Government also represents that "DMS has asserted its corporate privilege over such post-March 19, 2014 statements, the government does not and could not know what such statements are, given DMS's privilege assertion, and the government has not and does not plan to challenge

---

[3] Domalik initially argued that Kiehl violated state bar rules by contacting Domalik without the consent of Domalik's counsel. ([184] at 3-4). Domalik later stated that "whether or not Ms. Kiehl violated a state bar ethical rule is not, in and of itself, a means of suppressing Mr. Domalik's statements." ([194] at 3); see also United States v. Lowery, 166 F.3d 1119, 1124 (11th Cir. 1999) ("[A] state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible.").

DMS's privilege assertion." ([198] at 8). Thus, to the extent Domalik seeks to exclude testimony from Kiehl about her conversations with Domalik after DMS acquired Rite Way's assets, Domalik's Motion is denied as moot.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Brian Domalik's Motion In Limine to Preclude the Introduction of Privileged Communications [184] is **DENIED**.

**SO ORDERED** this 9th day of September, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE